UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ABSOLEM THOMAS,

    Plaintiff,

v.                                                            Case No. 2:08-cv-205
                                                          HON. R. ALLAN EDGAR

DAVID BERGH, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Absolem Thomas, a former Michigan Department of Corrections inmate, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Chaplain Gerald Riley, Warden David Bergh, N. Hoffman, and Michael Martin.

Plaintiff alleges that defendants violated his rights under the Religious Land Use and Institutionalized Persons Act and the First Amendent. Plaintiff alleges that he changed his religious preference on March 18, 2008, to the Assemblies of Yahweh, a non-Jewish religious organization that requires use of clean meats and required that he eat a Kosher diet. Plaintiff's request for a Kosher diet was denied. Plaintiff requests $2000.00 in punitive damages and $20.00 for each Kosher meal that he missed. Plaintiff requests that the court order defendants to provide him Kosher meals.

Defendants have moved for summary judgment. Plaintiff has not filed a responsive brief. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that defendant's conduct has violated his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1. Section 2000cc-1 states:

(a)  General Rule

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b).

Plaintiff has requested three forms of relief against defendants: 1) injunctive relief requiring defendants to provide Kosher meals; 2) damages in their official capacities; and 3) damages in their individual capacities. Plaintiff has been released from prison so his request for injunctive relief has been rendered moot. *Cardinal v. Marsh,* 564 F.3d 794 (6th Cir. 2009).

Plaintiff's attempt to get monetary damages in defendants' official capacity is barred under the Eleventh Amendment. The Sixth Circuit has stated that "because RLUIPA's 'appropriate relief' language does not clearly and unequivocally indicate that the waiver extends to monetary damages, the Eleventh Amendment bars plaintiff's claim for monetary relief." *Id.* at 801.

Similarly, in the opinion of the undersigned, plaintiff's claims for damages in defendants individual capacities is not available under the RLUIPA. In *Smith v. Allen,* 502 F.3d 1255(11 Cir. 2007), the court concluded that the RLUIPA does not create a private right of action against defendants in their individual capacities because the RLUIPA was enacted pursuant to Congress' Article I Spending Power and "the Spending Power cannot be used to subject individual defendants, such as sate employees, to individual liability in a private cause of action." *Id.* at 1274. The court explained that "section 3 of RLUIPA – a provision that derives from Congress' Spending

Power – cannot be construed as creating a private action against individual defendants for monetary damages." *Id.* at 1275.

Finally, in the opinion of the undersigned, plaintiff cannot show any violation of his First Amendment rights or rights under RLUIPA. Defendants maintain that they are entitled to summary judgment in this case because the denial of Kosher meals to plaintiff was the least restrictive means of furthering a compelling governmental interest. Defendants contend that the denial of a Kosher diet to prisoners who are not sincere in their religious beliefs furthers the MDOC's interest in maintaining security because prisoners who are sincere in their beliefs can be offended by those who are not sincere. In addition, Kosher meals cost at least twice as much as regular meals, so that denying such meals to non-sincere prisoners furthers the compelling governmental interest of controlling costs.

As noted above, plaintiff claims that defendants' conduct violated his constitutional right to freedom of religion and his rights under the RLUIPA, 42 U.S.C. § 2000cc-1. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See, for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See, for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See, generally, Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

The standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996). Instead, the inquiry is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v.*

> *Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965))
> (alteration in original) (emphasis added). A claimant need not be a
> member of a particular organized religious denomination to show
> sincerity of belief. *See Frazee v. Illinois Dep't of Employment Sec.*,
> 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

In *Jackson v. Mann*, the Second Circuit held that the district court erred in substituting the objective "accuracy" of the plaintiff's assertion that he was Jewish for the correct test – whether the plaintiff's beliefs were sincerely held. 196 F.3d at 320. The pertinent issue in *Jackson*, as in this case, was whether the plaintiff was entitled to receive a Kosher diet. *Id.* at 318. The Second Circuit concluded that the defendants in *Jackson v. Mann* were not entitled to summary judgment because even if the plaintiff was not Jewish according to Judaic law, this did not resolve the issue of material fact regarding the sincerity of the plaintiff's religious beliefs. *Id.* at 320-21.

Similarly, in *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), the Tenth Circuit held that merely because the plaintiff was not a member of the Cherokee nation or the Native American worship group at his prison, it did not mean that his belief was insincere. *Id.* at 1523.[1] As noted by the Tenth Circuit in *Mosier*[2], the United States Supreme Court has rejected the idea that membership in a religious organization is a prerequisite for religious convictions to be judged sincere. *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517-18 (1989).

Defendants have the right to ensure that each prisoner is sincere in his belief before allowing him access to the Kosher Meal Program. The use of MDOC Operating Procedure

---

[1] The plaintiff in *Mosier* was seeking an exemption from the prison's requirement that hair be kept to a certain length.

[2] *See Mosier*, 937 F.2d at 1523.

05.03.150 was a legitimate means of determining whether a prisoner is entitled to the Kosher menu.

The MDOC Operating Procedure 05.03.150-A provides:

> K. A prisoner who wants to participate in the Kosher Meal Program must submit a written request to the Warden or designee for approval. The request shall include a statement as to his/her religious beliefs which necessitate a Kosher diet.
>
> L. Upon receipt of such a request, the Warden shall verify that the prisoner is eligible to participate in the Kosher Meal Program based on the prisoner's designated religion by requiring the Assistant Deputy Warden for Programs or the chaplain to interview the prisoner and obtain a response to the following questions:
>
>> 1. Briefly explain the major teachings of your designated religion.
>>
>> 2. Why is a kosher diet required by this religion.
>>
>> 3. What is a kosher diet? In other words, how does it differ from food otherwise prepared by the institution? What types of food are not allowed?

Chaplain Riley has explained that plaintiff was denied access to the Kosher meal program for multiple reasons. Plaintiff had changed his religious preference repeatedly while confined in prison. Plaintiff showed that he lacked an understanding of the major teachings of his newly chosen religion and the reasons why he needed a Kosher diet. Further, plaintiff had options in the regular meal line of selecting foods that fit his dietary requirements. Moreover, it is defendant Riley's belief that plaintiff requested Kosher meals with the knowledge that his request would be rejected. Defendant Riley believes that plaintiff was hoping he could win a lawsuit for monetary damages.

In this case, under a totality of the circumstances approach, defendants have articulated valid reasons which justify the refusal to provide plaintiff a Kosher diet. Based upon plaintiff's interviews and the information gathered by defendants, it was not unreasonable to deny plaintiff's request. Plaintiff exhibited a lack of knowledge of the requirements of his newly chosen

religion and the purpose of a Kosher diet. Plaintiff had alternative means available to eat an appropriate diet that satisfied his religious concerns. The policy used by the prison and the interview process is not a pass or fail test. The prison must have some standards to determine the sincerity of a religious belief before granting an accommodation request. Accordingly, defendants' determination that plaintiff showed a lack of sincerity should not be disturbed by this Court. In the opinion of the undersigned, typically it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held. Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners needs. Defendants have the right to make sure that each prisoner is sincere in his belief before allowing a prisoner access to a religious based meal program. It is recognized that this is a very difficult task to undertake. However, a lack of the basic knowledge regarding why specific food must be consumed for a religion is a strong indication of a lack of sincerity. Under the circumstances of this case, it is the opinion of the undersigned that Defendants correctly considered plaintiff's sincerity and made an appropriate and well reasoned decision under the totality of facts available. In the opinion of the undersigned, defendants are entitled to summary judgment on Plaintiff's RLUIPA and freedom of religion claims.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendant's motion for summary judgment. Accordingly, it is recommended that defendants' motion for summary judgment (Docket #22) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same

reasons that the undersigned recommends granting defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 21, 2009